# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

EFRAIN MERCADO,          :

                     :    Civil Action No. 07-1576(SDW)

        Petitioner,   :

                     :

        v.        :    **OPINION**

                     :

MR. L. SHERRER, et al.,   :

                     :

        Respondents.  :

**APPEARANCES:**

      EFRAIN MERCADO, Petitioner pro se
      #426308/SBI 761290-B
      Northern State Prison
      168 Frontage Road
      Newark, New Jersey 07114

      JOHN L. MOLINELLI, BERGEN COUNTY PROSECUTOR
      CATHERINE A. FODDAI, ASSISTANT PROSECUTOR
      BERGEN COUNTY PROSECUTOR'S OFFICE
      Bergen County Justice Center
      Hackensack, New Jersey 07601
      Counsel for Respondents

**WIGENTON,** District Judge

    Petitioner Efrain Mercado, a convicted state prisoner currently confined at the Northern State Prison in Newark, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his New Jersey state court conviction and sentence. For the reasons stated herein, the Petition will be denied for lack of substantive merit.

## I.   BACKGROUND

A.   Statement of Facts

The facts of this case were recounted below and this Court, affording the state court's factual determinations the appropriate deference, see 28 U.S.C. § 2254(e)(1), will simply reproduce the Appellate Division's factual recitation, as set forth in its October 7, 2003, unpublished Opinion on petitioner's direct appeal from his New Jersey state court conviction and sentence:

> On May 11th, 2001, at approximately 7:30 p.m., Karen Scerbo (K. Scerbo) heard Rosemarie Fitzgerald (Fitzgerald), her neighbor in the Riverview Gardens apartment complex in North Arlington, screaming.  Fitzgerald had noticed two men she did not recognize in the parking lot of Riverview Gardens. She watched the men and began to scream after she heard a "pop" and saw defendant using a screwdriver to force open the door to a Buick parked in the parking lot.  K. Scerbo looked out the window, and Fitzgerald directed her attention up towards the parking lot area.  K. Scerbo saw the driver's and passenger side doors of her vehicle, a gray, four door, 1990 Buick Century Bronco, open.  She saw an individual standing on the driver's side and another standing on the passenger side.  K. Scerbo called to her husband, John Scerbo (J. Scerbo), and ran outside toward the parking lot. She shouted at the individuals that the police had been notified.  J. Scerbo came out of the apartment and yelled for K. Scerbo to get back in the house.  After K. Scerbo returned to Fitzgerald's apartment with the registration renewal form, Fitzgerald provided the police with the Buick's license plate number and description.
>
> J. Scerbo approached the Buick.  When he was ten to fifteen feet away from it he asked the individual standing on the passenger side what he was doing there, to which the individual responded, "I'm not doing nothing."  J. Scerbo continued toward the rear bumper of the vehicle and when he was seven to eight feet from it, the individual on the passenger side reached down toward his waistband and threw a half-full bottle of Pepsi at him.  The bottle hit J.

Scerbo's hand and grazed off the side of his face.  No
injuries resulted.

J. Scerbo continued to approach the Buick, which was parked
nose in, with a car to the immediate left, twelve to
eighteen inches away.  J. Scerbo was on the driver's side of
the Buick by the rear door, at which point he saw defendant
pop his head up in the driver's side.  Defendant then
started the Buick, put it into reverse quickly and pulled
out of the parking spot.  It veered to the side instead of
backing straight out.  J. Scerbo was forced to back peddle
to avoid being hit.  Defendant turned the wheel hard and
came within seven to eight inches of J. Scerbo.  Haywood
Mitchell, the individual on the passenger side, jumped into
the car and they exited the complex in the Buick.

Officer Michael Hofmann of the North Arlington Police
Department received a dispatch regarding the stolen Buick.
He spotted it traveling southbound on Ridge Road and
activated his emergency lights and sirens.  The Buick pulled
out of the lane, passed vehicles on the left, and proceeded
to go through the red light.  Officer Hofmann noticed a
white Ford Escort following the Buick.  The Ford Escort made
a right turn onto Belleville Turnpike, while the Buick
continued southbound on Ridge Road.  The Buick was traveling
at a high rate of speed, passing vehicles on the left,
crossing over double yellow lines, and sideswiping several
cars.  It struck a pickup truck from behind and the driver,
Mitchell, fled on foot while Officer Hofmann chased him.  A
passer-by stuck out his leg and tripped Mitchell, who was
then handcuffed and placed in custody.  The Buick was
totaled.

Captain Fanning and Officers Frank Guanci and Robert Reilly
also responded to the dispatch.  Captain Fanning and Officer
Guanci responded to the scene where the chase took place,
and Officer Reilly went to Riverview Gardens and took a
statement from J. Scerbo.  He also obtained the bottle of
Pepsi and a screwdriver that was found in the stolen Buick
and both items were placed into evidence at trial.

Mitchell lied and initially told the police that his name
was Haywood Harris and that he was a juvenile.  He was
treated at a hospital for a minor scrape on his forehead
that he received as a result of being tripped.  After being
treated, Mitchell was brought to the North Arlington Police
Department where he waived his rights and gave a taped
statement.

3

In his statement, he indicated that defendant, known to him as Franky Sanchez, was his accomplice during the theft of the Buick.  Mitchell testified that he and defendant had gone into North Arlington to go to a baseball store, and that they thereafter decided to steal the Buick.  He said that J. Scerbo did not have to move out of the way when the Buick backed out of the spot.  According to Mitchell, after they exited the complex in the Buick they drove to defendant's car, a white Ford Escort.  Defendant got into the Ford Escort and told Mitchell to drive the stolen car. Mitchell, while being processed the next day by Officer Hofmann, admitted to smoking PCP before stealing the Buick. Mitchell agreed to plead guilty to eluding in exchange for a five year sentence with two and a half years of parole ineligibility.

On May 17, 2001, Officer Guanci presented a photo array to J. Scerbo, from which he picked defendant as the individual who drove the stolen Buick out of Riverview Gardens.  At trial, Officer Guanci and Mitchell each identified defendant as the individual who drove the stolen Buick out of the apartment complex.

(October 7, 2003 Appellate Division Opinion, Exhibit 3 to

respondents' exhibits).[1]

_____

[1]  Respondents provided this Court with the relevant state court record, denoted as follows:

Exhibit 1: Petitioner's brief and appendix on direct appeal.
Exhibit 2: Respondents' response brief on direct appeal.
Exhibit 3: Appellate Division Opinion, filed October 7, 2003.
Exhibit 4: Petitioner's petition and appendix for certification.
Exhibit 5: Respondents' letter brief opposing petition for certification.
Exhibit 6: Petition for Post-Conviction Relief ("PCR").
Exhibit 7: Petitioner's memorandum of law in support of state PCR petition.
Exhibit 8: Assigned counsel's brief in support of state PCR petition.
Exhibit 9: Petitioner's brief and appendix on appeal from denial of state PCR petition.
Exhibit 10: Respondents' brief on state PCR appeal.
Exhibit 11: Appellate Division Opinion, filed September 22, 2006, affirming denial of state PCR petition.
Exhibit 12: Petition and appendix for certification from

B.  <u>Procedural History</u>

On or about August 20, 2001, petitioner, Efrain Mercado ("Mercado"), and a co-defendant Haywood Mitchell, were indicted by a Bergen County Grand Jury on charges of first degree carjacking (Count One), first degree robbery (Count Two), and third degree burglary (Count Three).  Mercado also was charged with second degree aggravated assault (Count Four), and co-defendant Mitchell was charged with second degree eluding (Count Five) and third degree hindering apprehension (Count Six).[2]

Mercado was tried before a jury and the Honorable Donald R. Venezia, J.S.C., on April 24, April 25, April 29, and April 30, 2002.  (Exhibits 14 through 17).  The jury acquitted Mercado of aggravated assault, but convicted him of carjacking, second degree robbery, and burglary.  Mercado moved for a judgment notwithstanding the verdict on the carjacking conviction, but the motion was denied.  The State also moved for an extended term of imprisonment and for restitution of property damages.  These motions also were denied.  (Exhibit 18).

---

                denial of state PCR petition.
        Exhibit 13: Respondents' letter brief in opposition to
            petition for certification on PCR appeal.
        Exhibit 14: Transcript of April 24, 2002
        Exhibit 15: Transcript of April 25, 2002
        Exhibit 16: Transcript of April 29, 2002
        Exhibit 17: Transcript of April 30, 2002
        Exhibit 18: Transcript of June 28, 2002
        Exhibit 19: Transcript of March 2, 2005


[2]  Co-defendant Mitchell pled guilty to eluding and testified at Mercado's trial.

At sentencing, on June 28, 2002, the trial judge merged Mercado's convictions for third degree burglary and second degree robbery with his conviction for carjacking, and sentenced Mercado to twenty years in prison with a ten-year parole ineligibility period.  This sentence was to run consecutive to a previously imposed prison term.  (Exhibit 18).

Mercado appealed his conviction and sentence to the Superior Court of New Jersey, Appellate Division on August 14, 2003. (Exhibit 1).  In an unpublished opinion filed October 7, 2003, the Appellate Division affirmed the conviction and sentence, except to remand to amend the judgment of conviction by deleting the Victims' Crimes and Compensation Board ("VCCB") penalties on the merged offenses of robbery and burglary.  (Exhibit 3). Mercado then filed a petition for certification on October 22, 2003, to the Supreme Court of New Jersey.  (Exhibit 4).  The petition for certification was denied on December 11, 2003. State v. Mercado, 178 N.J. 376 (2003).

Thereafter, Mercado filed a petition for post-conviction relief ("PCR") in state court, on March 22, 2004.  (Exhibit 6). Assigned counsel for Mercado later filed an amended PCR petition on Mercado's behalf.  (Exhibit 8).  On March 2, 2005, Judge Venezia heard the arguments of counsel and denied Mercado's state PCR petition.  (Exhibit 19).  An order denying the PCR petition was filed on March 9, 2005.  Mercado appealed this decision to the Superior Court of New Jersey, Appellate Division, which later

affirmed denial of the PCR petition in an unpublished opinion filed September 25, 2006.  (Exhibits 9, 11).  Mercado then filed a petition for certification with the Supreme Court of New Jersey.  (Exhibit 12).  The Supreme Court of New Jersey denied certification on December 8, 2006.  State v. Mercado, 189 N.J. 104 (2006).

Mercado filed this federal habeas petition under 28 U.S.C. § 2254 on or about April 5, 2007.  Respondents answered the petition, providing the relevant state court record, on November 13, 2007.  Mercado filed several motions with this Court seeking additional time to file his reply or traverse to the State's answer.  On July 31, 2008, this Court issued an Order granting Mercado thirty days to file his reply/traverse.  (Docket Entry No. 13).  Mercado has not filed a traverse or reply as he had requested.

## II.  STATEMENT OF CLAIMS

Mercado raises the following claims for habeas relief in his petition:

Ground One:  Ineffective assistance of trial counsel in failing to conduct any pretrial investigation and present character witnesses at trial.

Ground Two:  There was no evidence or proof at trial to support petitioner's conviction on the robbery charge.

Ground Three:  Petitioner asserts that an issue of identification at trial shows him to be innocent of the charges for which he was convicted.

Ground Four:  There was no evidence or proof at trial to support petitioner's conviction for carjacking.

The State contends that the petition should be denied for lack of substantive merit.  The State also argues that many of Mercado's claims are procedurally defaulted.

In reviewing the claims asserted by Mercado, and the relevant state court record submitted by the State, this Court finds that Grounds Two and Three of this habeas petition were never presented for state court review, and thus, were not exhausted before bringing this habeas petition, as required under 28 U.S.C. § 2254(b)(1)(A).  However, Section 2254(b)(2) provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  See also Lambert v. Blackwell, 387 F.3d 210, 260 n. 42 (3d Cir. 2004); Lewis v. Pinchak, 348 F.3d 355, 357 (3d Cir. 2003).

The Third Circuit determined that § 2254(b)(2) codifies the holding in Granberry v. Greer, 481 U.S. 129 (1987), "by conferring upon the district court the authority to deny a habeas petition on the merits despite the petitioner's failure to

exhaust state remedies." Lambert v. Blackwell, 134 F.3d 506, 514

(3d Cir. 1997), cert. denied, 532 U.S. 919 (2001).

In Granberry, the Court held that where a state failed to

raise the exhaustion defense in the district court, the court of

appeals may examine the exhaustion issue under the following

circumstances:

> The court should determine whether the
> interests of comity and federalism will be
> better served by addressing the merits
> forthwith or by requiring a series of
> additional state and district court
> proceedings before reviewing the merits of
> the petitioner's claim . . . . [I]f it is
> perfectly clear that the applicant does not
> raise even a colorable federal claim, the
> interests of the petitioner, the warden, the
> state attorney general, the state courts, and
> the federal courts will all be well served
> even if the State fails to raise the
> exhaustion defense, the district court denies
> the habeas petition [on the merits], and the
> court of appeals affirms the judgment of the
> district court forthwith.

Granberry, 481 U.S. at 134-135.

Thus, the Third Circuit has instructed district courts that

they may deny a mixed petition on the merits under § 2254(b)(2)

only "if it is perfectly clear that the applicant does not raise

even a colorable federal claim." Lambert, 134 F.3d at 515

(quoting Granberry, 481 U.S. at 135). Under this standard, "if a

question exists as to whether the petitioner has stated a

colorable federal claim, the district court may not consider the

merits of the claim if the petitioner has failed to exhaust state

remedies and none of the exceptions set forth in sections 2254(b)(1)(B)(I) and (ii) applies." Lambert, 134 F.3d at 515.

Here, as set forth below, it is plain that Mercado's unexhausted claims asserted in Grounds Two and Three of his petition fail to raise a colorable federal claim and should be denied accordingly.

### III.   STANDARD OF REVIEW

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972). A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970). Because petitioner is a pro se litigant, the Court will accord his petition the liberal construction intended for pro se petitioners.

Under § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), federal courts in habeas matters must give considerable deference to determinations of the state trial and appellate courts. See 28 U.S.C. § 2254(e); Duncan v. Morton, 256 F.3d 189, 196 (3d Cir.), cert. denied, 122 S.Ct. 269 (2001); Dickerson v. Vaughn, 90 F.3d 87, 90 (3d Cir.

1996)(*citing* <u>Parke v. Raley</u>, 506 U.S. 20, 36 (1992)).  Section

2254(d) sets the standard for granting or denying a habeas writ:

> (d)  An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the judgment
> of a State court shall not be granted with respect to
> any claim that was adjudicated on the merits in State
> court proceedings unless the adjudication of the claim -
>> (1)  resulted in a decision that was contrary to, or
>> involved an unreasonable application of, clearly
>> established Federal law, as determined by the
>> Supreme Court of the United States; or
>> (2)  resulted in a decision that was based on an
>> unreasonable determination of the facts in light
>> of the evidence presented in the State court
>> proceeding.

28 U.S.C. § 2254(d).

In <u>Williams v. Taylor</u>, 529 U.S. 362 (2000), the Supreme

Court explained that subsection (d)(1) involves two clauses or

conditions, one of which must be satisfied before a writ may

issue.  The first clause, or condition, is referred to as the

"contrary to" clause.  The second condition is the "unreasonable

application" clause.  <u>Williams</u>, 529 U.S. at 412-13.  In the

"contrary to" clause, "a federal court may grant the writ if the

state arrives at a conclusion opposite to that reached by [the

Supreme] Court on a question of law or if the state court decides

a case differently than [the Supreme] Court has on a set of

materially indistinguishable facts."  <u>Id</u>.  Under the

"unreasonable application" clause, a federal court may grant the

writ if "the state court identifies the correct governing legal

principle from [the Supreme] Court's decisions but unreasonably

applies that principle to the facts of [the petitioner's] case."

<u>Id</u>. at 413.  Habeas relief may not be granted under the "unreasonable application" condition unless a state court's application of clearly established federal law was objectively unreasonable; an incorrect application of federal law alone is not sufficient to warrant habeas relief.  <u>Id</u>. at 411.  <u>See also</u> <u>Werts</u>, 228 F.3d at 197; <u>Matteo v. Superintendent, SCI Albion</u>, 171 F.3d 877, 891 (3d Cir. 1999), <u>cert</u>. <u>denied</u> <u>sub</u> <u>nom</u> <u>Matteo v. Brennan</u>, 528 U.S. 824 (1999).

Consonant with <u>Williams</u>, the Third Circuit has held that § 2254(d)(1) requires a federal habeas court to make a two step inquiry of the petitioner's claims.  First, the court must examine the claims under the "contrary to" provision, identify the applicable Supreme Court precedent and determine whether it resolves petitioner's claims.  <u>See</u> <u>Werts</u>, 228 F.3d at 196-97; <u>Matteo</u>, 171 F.3d at 888-891.  If the federal court determines that the state court's decision was not "contrary to" applicable Supreme Court precedent, then the court takes the second step of the analysis under § 2254(d)(1), which is whether the state court unreasonably applied the Supreme Court precedent in reaching its decision.  <u>Werts</u>, 228 F.3d at 197.

This second step requires more than a disagreement with the state court's ruling because the Supreme Court would have reached a different result.  <u>Id</u>.  AEDPA prohibits such <i>de novo</i> review.  Rather, the federal habeas court must determine whether the state court's application of the Supreme Court precedent was

objectively unreasonable.  _Id_.  In short, the federal court must decide whether the state court's application of federal law, when evaluated objectively and on the merits, resulted in an outcome that cannot reasonably be justified under existing Supreme Court precedent.  _Id_.; _see also_ _Jacobs v. Horn_, 395 F.3d 92, 100 (3d Cir. 2005).

Even a summary adjudication by the state court on the merits of a claim is entitled to § 2254(d) deference.  _Chadwick v. Janecka_, 312 F.3d 597, 605-06 (3d Cir. 2002), _cert_. _denied_, 538 U.S. 1000 (2003)(_citing_ _Weeks v. Angelone_, 528 U.S. 225, 237 (2000)).  With respect to claims presented to, but unadjudicated by, the state courts, however, a federal court may exercise pre-AEDPA independent judgment.  _See_ _Hameen v. State of Delaware_, 212 F.3d 226, 248 (3d Cir. 2000), _cert. denied_, 532 U.S. 924 (2001); _Purnell v. Hendricks_, 2000 WL 1523144, *6 n.4 (D.N.J. 2000).  _See also_ _Schoenberger v. Russell_, 290 F.3d 831, 842 (6th Cir. 2002) (Moore, J., concurring) (and cases discussed therein).

Finally, federal courts are required to apply a "presumption of correctness to factual determinations made by the state court."  _Id_.; _see also_ 28 U.S.C. § 2254(e)(1).  The Third Circuit has ruled that this presumption of correctness based upon state court factual findings can only be overcome by clear and convincing evidence.  _See_ _Duncan_, 256 F.3d at 196 (_citing_ 28 U.S.C. § 2254(e)(1)).  Consequently, a habeas petitioner "must clear a high hurdle before a federal court will set aside any of

the state court's factual findings." Mastracchio v. Vose, 274 F.3d 590, 597-98 (1st Cir. 2001).

IV.   ANALYSIS

A.   Ineffective Assistance of Trial Counsel

The right to counsel is the right to effective assistance of counsel, and counsel can deprive a defendant of the right by failing to render adequate legal assistance. See Strickland v. Washington, 466 U.S. 668, 686 (1984). Under Strickland, a petitioner seeking to prove a Sixth Amendment violation must demonstrate that his counsel's performance fell below an objective standard of reasonableness, assessing the facts of the case at the time of counsel's conduct. Id. at 688-89; Jacobs v. Horn, 395 F.3d 92, 102 (3d Cir. 2005), cert. denied, Jacobs v. Beard, 126 S.Ct. 479 (2005); Keller v. Larkins, 251 F.3d 408, 418 (3d Cir. 2001). Counsel's errors must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 688. "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. The Supreme Court further explained:

> Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

14

counsel's challenged conduct, and to evaluate the
conduct from counsel's perspective at the time.
Because of the difficulties inherent in making the
evaluation, a court must indulge a strong presumption
that counsel's conduct falls within the wide range of
reasonable professional assistance; that is, the
defendant must overcome the presumption that, under the
circumstances, the challenged action "might be
considered sound trial strategy."

Id. at 689 (citations omitted); see also Virgin Islands v.
Wheatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996).

If able to demonstrate deficient performance by counsel, the
petitioner must also show that counsel's substandard performance
actually prejudiced his defense.  Strickland, 466 U.S. at 687.
Prejudice is shown if "there is a reasonable probability that,
but for counsel's unprofessional errors, the result of the
proceeding would have been different.  A reasonable probability
is a probability sufficient to undermine confidence in the
outcome."  Id. at 694.  The reviewing court must evaluate the
effect of any errors in light of the totality of the evidence.
Id. at 695-96.  Thus, the petitioner must establish both
deficient performance and resulting prejudice in order to state
an ineffective assistance of counsel claim.  Id. at 697; see also
Jacobs, 395 F.3d at 102; Keller, 251 F.3d at 418.

In this case, Mercado asserts that his trial counsel was
ineffective for not pursuing a pretrial investigation or
presenting character witnesses at trial.  He raised this claim in
his state PCR petition, but the focus of his ineffective
assistance of counsel claim bore on his counsel's decision not to

investigate a potential alibi defense.  Apparently, Mercado alleged that he was with his mother at the time of the carjacking/robbery, recovering from a wound sustained a month earlier during an unrelated incident in which Mercado was shot by police as he drove a stolen vehicle at a police officer while attempting to escape.  In a pretrial ruling, Judge Venezia had ordered the State to refrain from mentioning this earlier incident at trial.

The Appellate Division affirmed the state PCR court ruling that denied the ineffective assistance of counsel claim, by finding:

> In denying defendant's PCR without an evidentiary hearing, the judge concluded that trial counsel could not be faulted for failing to present an alibi defense under these circumstances because it would have risked exposing the jury to an earlier shooting, with its attendant substantial prejudice.  In doing so, the judge accepted PCR counsel's proffer as to the proposed alibi.  As a result, he was of the view that defendant had not surmounted the first prong of the Strickland/Fritz[3] test, which requires a showing that counsel's performance was deficient.  State v. Fritz, 105 N.J. 42, 52 (1987).
>
> While we agree with the judge's conclusion, we do so for a different reason.  In our view, as the State argues, defendant failed to satisfy the second prong of the Strickland test, which requires a showing of prejudice.  State v. Fritz, supra, 105 N.J. at 60-61.  Defendant failed to present any evidence, by way of affidavit or certification, that his mother would have actually testified as he suggested.  That evidence cannot be supplied by a proffer through counsel.  Without proof that a proper investigation would have resulted in testimony by defendant's mother that he was with her on the night of the carjacking, defendant failed to demonstrate prejudice. Thus, no hearing was necessary, and the petition was properly denied without an evidentiary hearing.

---

[3]   State v. Fritz, 105 N.J. 42 (1987).

16

(Appellate Division Opinion, filed September 22, 2006, Exhibit 11).

This Court is satisfied from its review of the state court rulings on this issue that Mercado has not established a constitutional violation; nor has he shown, as required under 28 U.S.C. § 2254(d), that the actions of the state courts resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court in Strickland, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Mercado fails to state exactly how an investigation by his trial counsel would have discerned any exculpatory evidence, nor has he alleged the potential character witnesses that might have helped petitioner at trial.  These shortcomings by petitioner show that he has failed to satisfy the first prong of deficient performance by counsel, as required under Strickland, and it further underscores that Mercado cannot demonstrate prejudice. Therefore, this ineffective assistance of trial counsel claim for habeas relief will be denied.

B.  Carjacking Conviction

Next, in Ground Four, Mercado argues that there was insufficient evidence at trial to support the elements of a carjacking offense, and therefore, his conviction on this charge is not supported by the evidence.  Principally, Mercado alleges

17

that the victim was not in sufficient control of the vehicle at the time of the theft, and thus, an essential element of carjacking was not proven.  He raised this claim on direct appeal, and the Appellate Division roundly rejected the claim.

The Appellate Division first set forth the applicable portion of the carjacking statute at issue:

> A person is guilty of carjacking if in the course of committing an unlawful taking of a motor vehicle, as defined in N.J.S.A. 39:1-1, or in an attempt to commit an unlawful taking of a motor vehicle he:
> ....
> (2) threatens an occupant or person in control with, or purposely or knowingly puts an occupant or person in control of the motor vehicle in fear of, immediate bodily injury;
> ....
> An act shall be deemed to be "in the course of committing an unlawful taking of a motor vehicle" if it occurs during an attempt to commit the unlawful taking of a motor vehicle or during an immediate flight after the attempt or commission.

> [N.J.S.A. 2C:15-2].

The appellate court then found no merit to petitioner's claim, holding as follows:

> The carjacking statute is designed to "enhance the punishment applicable to persons who use force or intimidation to gain possession of a motor vehicle."  State v. Williams, 289 N.J. Super. 611, 616 (App. Div.), certif. denied, 145 N.J. 375 (1996).  Thus, its scope is broad and is not limited to circumstances where the theft of a vehicle occurs while the victim is physically located within the vehicle.  "Whether the occupant or person in ... control over the automobile is actually situated within the structure of the vehicle when force is employed or threatened is irrelevant under ... [N.J.S.A. 2C:15-2].  Ibid.

> In determining whether the victim was "in control of the vehicle", as required under subsection (2) of the carjacking statute, the pivotal issue is the victim's proximity to the

vehicle.  State v. Jenkins, 321 N.J. Super. 124, 131 (App. Div.), certif. denied, 162 N.J. 197 (1999).  To be considered in control of the vehicle, the victim must be in close proximity to it.  Id.  The existence of such proximity is important because "it clearly bears upon the victim's capacity to control the vehicle, either in terms of his own ability to operate it, or to bar entry by others."  Id.

Furthermore, the existence of proximity "establish[es] that defendant's actions exposed the victim to a particular risk of harm beyond mere loss of the vehicle."  Id.  The focus is on whether there is sufficient proof that defendant's actions placed the victim "within a heightened zone of danger with relationship to the subject vehicle."  Id. at 132.  As indicated in the legislative history, the Legislature was prompted to enact the carjacking statute based on a concern for victims of automobile theft being subject to this "heightened zone of danger."  Id. at 131.

This court in Jenkins did not find that the requisite proximity existed where the victim had parked his vehicle in a cemetery and proceeded to a grave site to wait for a friend.  The assailant, who was armed with a gun, approached the victim from behind and asked him for his money and car keys.  The victim complied with the assailant's requests.  Stating that "visitors to a cemetery are often forced to park some distance from a grave site," this court found that the record did not prove otherwise.  Jenkins, 321 N.J. Super. at 126-27.  It was also held that constructive possession of a vehicle does not equate to being "in control of" a vehicle, thus constructive possession alone would not satisfy subsection (2).  Id. at 132.

In Jenkins, we distinguished the facts from cases where the victims were in close proximity to the automobile.  Sch cases include State v. Williams, 289 N.J. Super. at 614, where according to the defendant's very own assertions, he pushed the victim from the side of the car where the victim had been standing, jumped into the driver's seat, and drove away.  Similarly, a victim who was across the street from the car she had just parked when she was assaulted and relieved of her car keys by two assailants was considered in close proximity to her vehicle.  State v. Matarama, 306 N.J. Super. 6, 12 (App. Div. 1997), certif. denied, 153 N.J. 50 (1998).

Here, the evidence shows that the victim was trying to control his vehicle at the time the crime occurred.  When the victim became aware that his vehicle was being stolen, he immediately exercised control over the vehicle by

confronting defendants while they were in the course of committing the crime.  The victim's control was exerted through his questioning of defendants as to why they were near his vehicle and by his actual physical presence when approaching the vehicle, coming within inches of it.  The victim was placed at risk of physical harm as defendant backed the vehicle out of the parking spot at a high rate of speed, veering it toward the victim as he fled the scene. The victim was forced to jump out of the way to avoid physical injury and but for his ability to do so, he could have suffered harm well beyond the mere loss of the vehicle. While defendant did not use force, his reckless operation of the vehicle while pulling out of the parking spot to escape the scene could be likened to the use of a weapon.  See State v. Burford, 321 N.J. Super. 360, 363-64 (App. Div. 1999), aff'd., 163 N.J. 16 (2000)(confirming that a vehicle can be used as a weapon under certain circumstances such as when a defendant is attempting to flee a scene).

The risk that the victim experienced placed him in close proximity to the vehicle and in a "heightened zone of danger" – the two factors stressed by the Jenkins court as pivotal in determining whether a victim is in control of his vehicle.  In our view, defendant's motion for a judgment of acquittal of the carjacking charge was properly denied by the trial judge.

(Appellate Division Opinion, filed October 7, 2003, Exhibit 3).

Respondents argue that this claim does not state a federal constitutional claim, but rather is challenging the New Jersey courts interpretation of a New Jersey statute.  This Court agrees.  Habeas corpus relief is available only if there has been a violation of a federal constitutional right.  Milton v. Wainwright, 407 U.S. 62, 67-68 (1991).  Moreover, a federal court does not sit to review state court interpretations of state law; rather, the petitioner must assert a claim of error that rises to the level of a federal constitutional violation.  Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  Here, Mercado is simply challenging the state court's interpretation of the New Jersey

statute on carjacking.  He raises no federal constitutional violation, and this Court finds none from review of the record. Therefore, this habeas claim will be denied accordingly.

C.  Identification Issue

In Ground Three, Mercado complains that state witness, Rosemarie Fitzgerald testified at trial that she saw petitioner at the passenger side of the vehicle and co-defendant Mitchell at the driver's side.  Accordingly, he argues that he is actually innocent of carjacking.  This claim was not raised on state court review.

This Court finds no merit to petitioner's claim.  First, it appears that Mercado is asserting again that the evidence introduced at trial does not support his conviction for carjacking.  As noted above, there was ample evidence at trial to show that Mercado was the individual identified as the driver of the vehicle when it was taken from Riverview Gardens.  Most significantly, J. Scerbo testified that Mercado was the driver of the vehicle when he went to stop the carjacking.  Therefore, at most, Mercado is merely asserting an inconsistency in identification, which the jury did not find sufficient to engender reasonable doubt concerning Mercado's guilt in this matter.  Therefore, this claim will be denied for lack of merit.

D.   Robbery Conviction

Finally, in Ground Two, Mercado argues that there was no evidence at trial to support the robbery conviction.  He contends that the evidence supports only a theft by unlawful taking, and that even the trial judge did not find the facts of the case to show use of the vehicle as a weapon, when the court declined to impose an extended term of imprisonment.

This claim was not raised on state court review, but it is evident from the record that there is no merit to petitioner's claim that there was insufficient evidence at trial to convict him of robbery.

A claim that the jury's verdict was against the weight of the evidence raises a due process concern.  Only where, "after viewing the evidence in the light most favorable to the prosecution, [no] rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" should the writ issue.  Jackson v. Virginia, 443 U.S. 307, 319 (1979).  This standard must be applied "with explicit reference to the elements of the criminal offense as defined by state law."  Jackson, 443 U.S. at 324, n.16.  See also Orban v. Vaughn, 123 F.3d 727 (3d Cir. 1997), cert. denied, 522 U.S. 1059 (1998).  As noted above, state court factual determinations are presumed to be correct.  See Werts v. Vaughn, 228 F.3d 178, 186 (3d Cir. 2000), cert. denied, 532 U.S. 980 (2001).

Here, there is no question from review of the trial record that there was sufficient evidence presented at trial for the jury to convict Mercado on the charge of robbery.  Under New Jersey law, a robbery conviction requires that the State prove beyond a reasonable doubt that, in the course of committing a theft, Mercado purposely put another in fear of immediate bodily injury.  Under N.J.S.A. 2C:15-1, an act is considered to be "in the course of committing a theft" if it occurs in an attempt to commit the theft, during the commission of the theft itself, or in immediate flight after the attempt or commission.  "Theft" is defined under N.J.S.A. 2C:20-3, as the unlawful taking, or exercise of unlawful control over, the property of another with the intent to deprive that person of his property.  "Bodily injury" is defined under N.J.S.A. 2C:11-1a, as physical pain, illness or any impairment of physical condition.

In this case, the record shows that these elements of robbery were proven to the jury.  The Appellate Division noted the facts of this case by citing that the victim, J. Scerbo, was trying to stop Mercado from stealing his car, by coming in close proximity to gain control of his vehicle.  Mercado then sped the car out of the parking lot, aiming it at J. Scerbo, who had to jump out of the way to prevent bodily injury.  This evidence at trial clearly shows that the State proved the elements of robbery beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. at

319.[4]  Therefore, these factual findings by the jury substantially support every element of robbery, and this claim will be denied for lack of merit, accordingly.

### V.  CERTIFICATE OF APPEALABILITY

This Court next must determine whether a certificate of appealability should issue.  See Third Circuit Local Appellate Rule 22.2.  The Court may issue a certificate of appealability only if the petitioner "has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  For the reasons discussed above, this Court's review of the claims advanced by petitioner demonstrates that he has failed to make a substantial showing of the denial of a constitutional right necessary for a certificate of appealability to issue.  Thus, this Court declines to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2).

### CONCLUSION

For the above reasons, this Court finds that the § 2254 habeas petition should be denied on the merits and a certificate of appealability will not issue.   An appropriate Order follows.


S/Susan D. Wigenton
SUSAN D. WIGENTON
United States District Judge
DATED: February 2, 2009

---

[4]  Moreover, this Court notes, in agreement with respondents, that the jury was given the option of convicting Mercado of the lesser offense of theft, but instead, based on the evidence at trial, convicted Mercado of second degree robbery.